IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KHIN MAUNG THAN,  )  | |
| )  | |
| Plaintiff,  )  | |
| )  | |
| v.  )  | |
| )  | Case No:  1:05-CV-01042 (RMU) |
| RADIO FREE ASIA,  )  | |
| )  | |
| Defendant.  )  | |
| )  | |

**PLAINTIFF'S LOCAL RULE 7(H)/56.1 STATEMENT OF MATERIAL FACTS**
**DEMONSTRATING THE EXISTENCE OF GENUINE ISSUES FOR TRIAL**

Pursuant to Local Rules 7(h) and 56.1, plaintiff Dr. Khin Maung Than ("Dr. Than")

offers the following Statement of Material Facts Demonstrating the Existence of Genuine Issues

for Trial in support of Plaintiff's Opposition to Defendant Radio Free Asia's Motion for

Summary Judgment.  The following factual disputes demonstrate genuine issues for trial.

Gender Discrimination

1.    In 2003, Radio Free Asia ("RFA") hired Ms. Kyi Kyi Than as a full-time

broadcaster.  The record demonstrates that RFA's job advertisement for this position required

one year of broadcast or journalism experience.  Radio Free Asia:  Job Announcement, RFA-

00490 (Ex. 10).[1]  The record indicates Ms. Kyi Kyi Than did not have this experience and was

not qualified.  Resume of Kyi Kyi Than, RFA-00103 (June 4, 2003) (Ex. 16); Applicant Review

Sheet - Ms. Kyi Kyi Than, RFA-00062 (Ex. 11); Deposition of Nancy Shwe ("Shwe Depo.") at

64 (Ex. 7).  The record also demonstrates that Kyi Kyi Than's English ability was below

---

[1]    "Ex. ___ " refers to exhibits to the Declaration of David E. Kouba filed in support of Plaintiff
Khin Maung Than's Opposition to Defendant Radio Free Asia's Motion for Summary Judgment.

1

average. Deposition of Khin Maung Nyane ("Nyane Depo.") at 47-48 (Ex. 2). Based on this record, whether Ms. Kyi Kyi Than was qualified for the position of full-time broadcaster is a genuine issue of material fact.

2.     Ms. Than was hired over a more qualified male, Dr. Than. Dr. Than had extensive journalism experience. *See* Affidavit of Khin Maung Than ("Dr. Than Aff.") at ¶¶ 4-6 (Ex. 3). In addition, listeners to RFA had praised Dr. Than's performance in his weekly broadcast, noting that he "was lively, confident, articulate, energetic – and pronounced English names correctly." Intermedia Evaluation of Science & Technology (Jan. 18, 2003), Than91 (Ex. 8). Given Dr. Than's relative qualifications, whether RFA's decision to hire Ms. Kyi Kyi Than was motivated by gender is a genuine issue of material fact.

3.     RFA claims that it offered the full-time broadcaster position to a male before offering it to Ms. Kyi Kyi Than. This statement is contrary to prior statements made by RFA to the Equal Employment Opportunity Commission ("EEOC"). Letter from G. Abramson on behalf of RFA to EEOC (Oct. 1, 2004) ("RFA EEOC Resp.") at 4 n.3, RFA-00478 (Ex. 1). This statement also conflicts with the record, which demonstrates that Ms. Kyi Kyi Than was hired before RFA announced that Mr. T.A. Cho had been hired. Than Aff. ¶¶ 19-21. Accordingly, whether RFA's statement that it hired a male first is a genuine issue of material fact.

4.     RFA claims that Dr. Than answered one question regarding Burmese political figure Aung San Suu Kyi incorrectly during his interview and this disqualified him from being a full-time broadcaster. RFA has no record of this question being asked. Some RFA employees were not asked this question prior to employment at RFA. *See, e.g.*, Nyane Depo. at 8. Dr. Than was not asked this question at his first interview in 2002. Deposition of Soe Thinn ("Thinn Depo.") at 157-58 (Ex. 4). Other than 2003, RFA did not identify any individuals who had been

2

disqualified for answering this question incorrectly. Shwe Depo. at 74-75. Deputy Director

Shwe, when asked by Dr. Than about his 2003 interview shortly thereafter, explained he had

done fine, had no weaknesses, and never mentioned any concerns regarding political bias or the

Aung San Suu Kyi question. Dr. Than Aff. ¶ 22. Based upon this record, whether RFA asks all

full-time broadcasters and others in the Burmese Service the same question is a genuine issue of

material fact.

> 5.    RFA provided no written evidence of a policy against hiring individuals whom

they perceive to be politically biased, and no reference is made to it in the job announcement.

*See* RFA Job Announcement. Other than 2003, they could identify no individuals who had been

precluded from employment as a full-time broadcaster because of perceived political biases.

Shwe Depo. at 74-75. Outside of the one Aung San Suu Kyi question during some interviews,

RFA could identify no other point during the application or interview process at which potential

employees are screened for possible political biases. Shwe Depo. at 73. Based upon this record,

whether RFA has a general policy against hiring individuals based on perceived political biases

is a genuine issue of material fact.

Retaliation

> 6.    Dr. Than filed a charge with the EEOC regarding possible gender discrimination,

and a notice of charge was issued on August 19, 2004. Notice of Charge of Discrimination

(Aug. 19, 2004), RFA-00462 (Ex. 14). RFA filed an official response to this notice on October

1, 2004. RFA EEOC Resp. Dr. Than received notice that RFA was terminating his voice

consultant contract on October 2, 2004. Than Aff. ¶¶ 26-27. Based upon these facts, whether

Dr. Than's EEOC charge caused RFA to terminate him is a genuine issue of material fact.

7.      From the record, it is not clear when decisions regarding contracts generally are made in RFA's Burmese Service. RFA asserts in its brief that they are made in August. RFA Br. at 6. Testimony from Director Thinn, however, indicates the decision making process begins in September. Thinn Depo. at 68. Other testimony suggests that these decisions are made even later. Shwe Depo. at 98-99. Because the timing of such decisions is relevant with respect to whether RFA had knowledge of Dr. Than's EEOC charge at the time it terminated his contract, when RFA makes decisions about contracts is a genuine issue of material fact.

8.      Director Thinn could not recall specifically when he learned of Dr. Than's EEOC charge, only that it was in fall of 2004. Thinn Depo. at 151. RFA, however, could not have prepared its response to Dr. Than's EEOC charge without discussing it with decision makers in the Burmese Service. *See* RFA EEOC Resp. Because it is relevant to the issue of whether a jury can infer retaliatory intent, when decision makers at RFA had knowledge of Dr. Than's EEOC charge is a genuine issue of material fact.

9.      For the same reason, the identity of those parties responsible for making decisions related to contracts at RFA is a genuine issue of material fact. *See, e.g.*, Shwe Depo. at 49; Lavery Depo. at 14.

10.     RFA asserts that rather than being caused by Dr. Than's EEOC charge, it has a policy to terminate voice consultant contracts every two or three years so that RFA can bring in new and fresh voices. *See* RFA Br. at 25. From the record it appears that 2003 was the only year during which voice consultants were terminated for "new voices." Shwe Depo. at 54-55. In addition, RFA apparently does not have any similar "new voice" policy for other positions with broadcasting responsibilities. Likewise, RFA could offer no written evidence that any such

practice existed prior to RFA's termination of Dr. Than. Nyane Depo. at 27. Whether RFA has such a policy or this explanation is pre-textual is a genuine issue of material fact.

11.     RFA also argues that it terminated Dr. Than's contract because RFA had concluded he did not possess the potential to become a full-time broadcaster. The record demonstrates that Dr. Than had applied to be a full-time broadcaster several times, beginning in 1998, and was denied each time. *See, e.g.*, RFA Br. at 6. Nevertheless, RFA now argues it did not conclude Dr. Than did not have the potential to become a full-time broadcaster until 2004. In light of the conflicting record, when RFA concluded Dr. Than was not capable of being a full-time broadcaster and whether RFA terminated Dr. Than's contract based on this conclusion are genuine issues of material fact.

Damages

12.     Dr. Than is seeking damages in part for front pay and back pay. The amount of damages to which Dr. Than reasonably is due is a genuine issue of material fact.

13.     RFA claims that Dr. Than failed to fully mitigate his damages. RFA Br. at 35. This argument raises several other genuine issues of material fact, including whether Dr. Than exercised reasonable diligence when seeking replacement employment, whether substantially equivalent employment existed, the amount of income Dr. Than would have earned in such positions, and whether Dr. Than would still be employed at such positions.

Intentional Infliction of Emotional Distress

14.     Dr. Than's claim for intentional infliction of emotional distress raises additional genuine issues of material fact. First, whether RFA's decision to hire Ms. Kyi Kyi Than and whether its decision to terminate Dr. Than were extreme and outrageous are genuine issues of

5

material fact. Second, whether the numerous physical symptoms suffered by Dr. Than constitutes severe emotional distress is a genuine issue of material fact. *See* Dr. Than Aff. ¶ 29.

*    *    *

In addition to the above genuine issues of fact, Dr. Than also offers the following in response to Defendant Radio Free Asia's Statement of Material Facts to Which There Is No Genuine Dispute ("RFA Statement").

1.      Dr. Than admits that on several occasions between 1998 and 2003 he applied to be a full-time broadcaster at RFA.

2.      Dr. Than admits that he took RFA's language proficiency test in 1999 and 2001 and that this test was used to assess eligibility for an interview to be a full-time broadcaster position.

3.      Dr. Than admits he wrote letters to RFA's Human Resources Department and then-RFA President Richard Richter. Dr. Than disputes RFA's characterization that in such letters Dr. Than "complained that he had not been interviewed for broadcaster positions." RFA Statement ¶ 3. Rather, in such letters, Dr. Than inquired as to whether he might be interviewed.

4.      Dr. Than admits that his first interview to be a full-time broadcaster was in 2002. Dr. Than admits that Alex Tseu and Dan Southerland were present at this interview. Dr. Than disputes RFA's claim that Burmese Service Director Soe Thinn did not participate in this interview. To the contrary, Director Thinn was in fact present at this interview. Thinn Depo. at 157. Dr. Than admits that he was not hired and that Ko Ko Aung was hired. Dr. Than admits that Deputy Director Nancy Shwe was not present at this interview.

5.      Dr. Than admits that in 2002, he was hired as a voice consultant.

6.      Dr. Than admits that he became an editorial consultant in October of 2002. Dr. Than admits that the program he wrote and broadcast was about science and technology. Dr. Than admits that he continues to work as an editorial consultant.

7.      Dr. Than admits that in 2003 he applied for and was interviewed for a full-time broadcaster position. Dr. Than admits that he was interviewed for this position by Director Thinn and Deputy Director Shwe.

8.      Dr. Than disputes RFA's description of its policy with respect to RFA's "Aung San Suu Kyi question." RFA has no written record documenting this policy. Likewise, RFA has no written record that all interviewees were asked this question or how such interviewees responded to this question. RFA has not asked all employees this question and did not ask Dr. Than this question in his first interview. Thinn Depo. at 157-58.

9.      Dr. Than disputes this allegation. RFA has no record of how any individual answered this question or even that every interviewee was asked this question.

10.      Dr. Than admits he was not selected to be a full-time broadcaster in 2003. Dr. Than disputes RFA's assertion that it was first offered to a male. On other occasions, RFA has asserted the opposite, that Mr. Cho was offered a position after Ms. Kyi Kyi Than had already been hired by RFA. *See, e.g.*, RFA EEOC Resp.

11.      Dr. Than disputes RFA's claim that it has a policy under which voice consultants remain under contract only for a maximum of two or three years and are replaced so fresh voices can be hired. *See supra* at Genuine Issue of Facts ¶ 10.

12.      Dr. Than admits that his voice consultant contract expired on September 30, 2004. Dr. Than admits that he learned his access card was cancelled on October 2, 2004

13.     Dr. Than admits that two other voice consultants' contracts also expired on September 30, 2004, and they were not renewed.  Dr. Than disputes the claim that Director Thinn and Nancy Shwe were the only individuals involved in this decision.  Director Thinn has testified that the decision was made by "senior management."  Than Aff. ¶ 27; Thinn Depo. 92-94.  Dr. Than disputes whether Director Thinn, Deputy Director Shwe and Susan Lavery were unaware of his EEOC Charge at the time they made the decision.  Genuine Issue of Facts ¶¶ 6-8.  Dr. Than admits that two other voice consultants were hired after Dr. Than was terminated.

14.     Dr. Than disputes the characterization of Dr. Than's February 23, 2004 letter as attributing his non-selection to be a full-time broadcaster in 2003 to "cronyism," "favoritism," and "hiring a foreigner."

Respectfully submitted,

Steven G. Reade (DC Bar #370778)
David E. Kouba (DC Bar #483145)
Joshua M. Glasser (DC Bar #489416)
ARNOLD & PORTER, LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1202
Tel:  (202) 942-5000
Fax: (202) 942-5999

Dated:  January 22, 2007