**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| KHIN MAUNG THAN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| v. | ) | **1:05-CV-01042 (RMU)** |
| | ) | |
| RADIO FREE ASIA, | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT RADIO FREE ASIA'S MOTION FOR SUMMARY JUDGMENT

Defendant Radio Free Asia ("RFA") hereby files this Reply to Plaintiff's Memorandum in Opposition to Defendant Radio Free Asia's Motion for Summary Judgment ("Plaintiff's Opposition"). Plaintiff cannot overcome RFA's well-supported Motion for Summary Judgment ("RFA's Motion") regarding Plaintiff's claims of gender discrimination, retaliation, and intentional infliction of emotional distress. Defendant respectfully requests that its Motion be granted *in toto*.

### ARGUMENT

**I.      PLAINTIFF DOES NOT, INDEED CANNOT, REFUTE THE UNDISPUTED FACT THAT HE DISQUALIFIED HIMSELF FROM CONSIDERATION FOR THE FULL-TIME BROADCASTER POSITION WITH HIS INCORRECT RESPONSE TO THE AUNG SAN SUU KYI QUESTION THAT WAS ASKED OF ALL FOUR CANDIDATES INTERVIEWED FOR THE POSITION.**

Plaintiff does not, and indeed cannot, point to any record evidence to refute the undisputed facts that (1) during their interviews, he and each of the other three candidates for the full-time broadcaster position in RFA's Burmese Service were asked a question designed to

ferret out journalistic bias; (2) Plaintiff and one other candidate answered the question

incorrectly, to wit, in a manner that indicated that they would be biased in the manner in which

they would broadcast news concerning Burma; and (3) their respective responses disqualified

them from any further consideration for the position. As discussed more fully in RFA's

Memorandum in Support of Defendant's Motion for Summary Judgment ("RFA's

Memorandum"), Plaintiff no longer was a viable candidate for the position and could not have

been selected for reasons having nothing to do with his gender.

Plaintiff's various assertions throughout his Opposition do not change the fact that he was

not selected for the full-time broadcaster position because his incorrect response during his

interview disqualified him from consideration irrespective of any other considerations.

Plaintiff's assertions in this regard do not raise any disputes as to material facts.

A.    **Asking The Interview Question Concerning Journalistic Bias Was A Consistent Practice In The Burmese Service.**

Plaintiff cannot show that the interview question about Aung San Suu Kyi designed to

ferret out journalistic bias was not the practice in the Burmese Service. It is undisputed that the

Soe Thinn and Nancy Shwe, who became responsible for interviewing and hiring broadcasters in

the Burmese Service beginning in October 2003, used that question in all of the interviews they

conducted. The record is undisputed that this question was asked to every candidate interviewed

for a full-time broadcaster position at that time and since that time.

> [O]ne critical question to all our interviewees that the Burmese
> service did was whether you would put a . . . news item which is
> detrimental to Aung San Suu Kyi on the radio or not. And if an
> interviewee says no, then he is automatically . . . rejected, no
> matter what kind of journalism experience or whatever. *We've
> done that in the past. And we're still doing it.*"

(See October 3, 2006 deposition of Soe Thinn ("Thinn Dep."), attached to RFA's Memorandum as Exhibit 2, at 122-23) (emphasis added)).[1] That no candidate other than Plaintiff and Maung Maung Nyo was disqualified based on their responses to this question (Plaintiff's Opposition at 24) is probative of nothing except that no one else answered the question incorrectly.[2]

Contrary to Plaintiff's assertions (Plaintiff's Opposition at 23-25), the record is undisputed that neither Soe Thinn nor Nancy Shwe had authority or responsibility for conducting interviews of candidates for full-time Burmese Service broadcaster positions prior to October 2003. (See Thinn Dep. at 159-161, attached to Plaintiff's Opposition as Exhibit 4; November 9, 2006 deposition of Nyein Shwe ("Shwe Dep."), attached to Plaintiff's Opposition as Exhibit 7, at 8, 11-12). Plaintiff's reference to the interviews that resulted in the hiring of Ko Ko Aung in 2002 are inapposite because neither Soe Thinn nor Nancy Shwe were responsible for those interviews. Rather, the record establishes that Dan Southerland, RFA's Vice President of Programming and Executive Editor, and Alex Tseu, Deputy Director of Programming, had that responsibility. (See RFA's Memorandum at 6). While Soe Thinn sat in on the interviews conducted by Dan Southerland and Alex Tseu in 2002, it is undisputed that he played no role in the interviews and was not allowed to make the hiring decision.[3]

Likewise, Plaintiff's reference to the hiring of Khin Maung Nyane in 1998 (Plaintiff's Opposition at 24) is distinguishable. Nyane was well-known to Soe Thinn and had worked in Burmese expatriate radio for many years. He thus had an established track record of veracity in

---

[1] The record establishes that a total of six (6) full-time broadcasters were hired into the Burmese service since the October 2003 hiring of Kyi Kyi Than. (RFA's Objections and Responses to Plaintiff's First Set of Interrogatories ("RFA's Ans. to Ints."), attached to RFA's Memorandum as Exhibit 3, Response No. 4).

[2] There is no evidence that Maung Maung Nyo filed any charge or that his disqualification was gender based.

[3] As indicated in RFA's Memorandum, p. 8 n.7, Soe Thinn unsuccessfully urged Southerland and Tseu to hire Tin Aung Cho.

broadcasting which was in contrast to Plaintiff who had been admonished concerning biased reporting. He also was hired in a senior position to give credibility and stability to RFA's then-nascent Burmese Service. (See November 10, 2006 deposition of Khin Maung Nyane, attached to Plaintiff's Opposition as Exhibit 2, at 6-7). October 3, 2006 deposition of Soe Thinn ("Thinn Dep."), attached to RFA's Memorandum as Exhibit 2, at 122-23)

Fischbach v. District of Columbia Department of Corrections, 86 F.3d 1180 (D.C. Cir. 1996), supports RFA's reliance on the bias question as a disqualifying factor. The Fischbach court recognized that giving more weight to responses to interview questions concerning "the manner in which each candidate proposed to do the job" is not discriminatory. Fischbach at 1184. Here, as in Fischbach, RFA used written applications and tests results to determine which candidates would be interviewed but based the hiring decision on answers to interview questions.[4] Id. 1182-84. The court found it was reasonable for an employer to place less emphasis on prior experience and instead to focus on how the candidate proposed to actually do the job. Id. at 1184. "An employer may of course select a candidate who on paper is less qualified for other reasons, such as subjective reactions that emerge in the interview." Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1294 n.10 (D.C. Cir. 1998) (en banc). In addition, like Plaintiff here, the unsuccessful plaintiff in Fischbach had been passed over previously for various jobs. Fischbach, 86 F.3d at 1184.

Further, contrary to Plaintiff's assertions, the Court of Appeals in Aka recognized that an employer, irrespective of an employee's paper qualifications, properly may reach a hiring decision based on the employer's assessment of an employee's judgment learned during an interview. 1294 n.10. That is even more important here where bias in broadcasting is a

---

[4] The record makes clear that Plaintiff was interviewed despite his inferior qualifications. (RFA's Memorandum at 10, 13, 24).

disqualifying factor and contrary to RFA's core mission.  (See RFA's Memorandum at 14, 20-21).

### 2.    Plaintiff's Remaining Arguments Do Not Create Any Issues Of Material Fact.

Plaintiff's remaining arguments fail to create any disputes of material facts that would prevent summary judgment in favor of RFA.  Plaintiff points out that the use of the interview question about journalistic bias is not written in RFA's policies or its job announcement. (Plaintiff's Opposition at 22).  Plaintiff cannot overcome the undisputed fact that Soe Thinn and Nancy Shwe consistently have used that question in all interviews they have conducted since they assumed responsibility for interviewing and hiring broadcasters in the Burmese Service.

The absence of journalistic bias is extremely important at RFA.  (See RFA's Memorandum at 12-13, 23).  Unbiased reporting is so crucial that RFA's mission statement focuses on reporting accurate news with "objectivity, fairness, quality, and integrity, [and] avoiding bias toward any people, government or nation."  (RFA Mission Statement, attached to RFA's Memorandum as Exhibit 1).  RFA's employee handbook also includes a Code of Journalistic Ethics to ensure that its journalists strictly adhere to high journalism standards. (Code of Journalistic Ethics, attached to RFA's Memorandum as Exhibit 1).

Likewise, Plaintiff's embellishment of his background does not help him.  First, whatever his self-proclaimed qualifications[5] were, he became disqualified from consideration for the

---

[5]  Plaintiff's embellishment of his prior experience in his affidavit accompanying his Opposition (see Plaintiff's Opposition at 5-6, 16) does not always comport with his deposition testimony.  It is well-known that a genuine issue of material fact is not valid to oppose summary judgment when it is created by a party's affidavit that contradicts that party's prior deposition or sworn testimony.  Pyramid Sec. Ltd. v. IB Resolution, 924 F.2d 1114, 1123 (D.C. Cir. 1991) (citations omitted).  For example, at his deposition, Plaintiff admitted to having no formal journalistic training and that his informal journalism experience consisted only of taking part in an annual student publication at his medical school in Burma.  (August 24, 2006 deposition of Khin Maung Than ("Than Dep. II"), attached to RFA's Memorandum as Exhibit 7, at 261-62).  While an affidavit may generally clarify deposition testimony based on confusion, prior sworn testimony receives greater weight unless persuasive reasons are believed for the correction. Pyramid, 925 F.2d at 1123 (citation omitted).  No such explanation has been provided here.

broadcaster position when he revealed a journalistic bias during his interview.[6] Further, even if his asserted qualifications were considered, Plaintiff would have to prove he was "significantly better qualified" than Kyi Kyi Than (see Aka, 156 F.3d at 1294), which he cannot do. That Kyi Kyi Than had no formal broadcasting background does not render her unqualified for the Burmese Service. First, she demonstrated her understanding of journalistic ethics by responding correctly to the bias question during her interview. Second, she did have experience as a vocalist in a public forum, comfort before the microphone, and she shared with Soe Thinn a background in economics, work in the Burmese foreign service, and their alma mater. (See Thinn Dep. at 128; Shwe Dep. at 69-70, 78). Her experience as a cashier after her emigration to the United States matched Plaintiff's similar work as a cashier. In any event, RFA's Burmese Service hired many broadcasters who did not have any prior broadcast or journalism experience, including Soe Thinn and Nancy Shwe and Ko Ko Aung who, like Plaintiff, was a medical doctor in Burma and who was hired instead of Plaintiff in 2002. (RFA Memorandum at 7, 20). In any event, as discussed more fully in RFA's Memorandum at 20, the record establishes that the Burmese Service could not always hire candidates with broadcast journalism experience because of Burma's socialist regime and lack of journalism schools, and that journalism experience did not always indicate who possessed the potential to be a good journalist. (Id.).

Plaintiff's subjective belief that he was the best candidate for a position cannot support an assertion that his qualifications were so superior as to create a discriminatory inference for Title VII purposes. Choates v. Powell, 265 F. Supp. 2d 81, 95 (D.D.C. 2003) (citation omitted)

---

[6] Plaintiff attempts to create a factual dispute by referring to Nancy Shwe's comments to him on November 22, 2003 regarding improvements he could make to become a full-time broadcaster and her failure to mention Plaintiff's political bias. (Plaintiff's Opposition at 10). Plaintiff did not testify to this conversation in his deposition when asked about conversations with Nancy Shwe. (Than Dep. II at 263). In any event, Plaintiff's question did not ask about his interview but rather performance in a position that he did not have and for which he recently had been disqualified.

(noting that "a plaintiff cannot satisfy his burden of demonstrating pretext 'simply based on [his] own subjective assessment of [his] own performance'"). Without additional evidence of pretext a court must respect the employer's decision because "Title VII 'does not authorize a federal court to become a super-personnel department that reexamines an entity's business decisions.'" Id. (quotations omitted). Thus, summary judgment for the employer was appropriate because the plaintiff offered only his subjective, unsupported assertion that he was the best candidate, and the disparities in qualifications were not so extreme as to justify a court overturning an employer's decision. Id. Further, the employer demonstrated that the selected candidate's communication skills were superior to the plaintiff's communications skills and such skills related to success in the position. Id. at 97. Likewise, here, the record establishes that Kyi Kyi Than met RFA's core ethical requirements to be a broadcaster while Plaintiff did not.

Similarly, there is no support in the record for Plaintiff's assertions concerning RFA's generic job advertisement. There is no dispute on the record that Human Resources Specialist Tamara Bagley posted advertisements for all nine of RFA's language services and that she used the same generic advertisement for each language service, changing only the language to match the particular language service for which she was advertising. (RFA Memorandum at 20). It also is undisputed on the record, as discussed above, that RFA hired candidates who did not possesses all of the qualifications in the job advertisement. RFA's asserted failure to adhere strictly to the written job requirements in its generic advertisements is not fatal to summary judgment. Fischbach, 86 F.3d at 1183 (citation omitted). In Fischbach, the employer relied more on a candidate's subjective responses to interview questions than the strict written job qualifications in an applicant's paperwork. As with Plaintiff's other assertions, this one, too, fails in any event because, irrespective of his resume and embellished employment history, he

disqualified himself as a candidate for the broadcaster position by indicating during his interview a propensity for bias in reporting factual news.

The same holds for Plaintiff's assertions about his work as an Editorial Consultant. Even assuming for the purposes of RFA's Motion that his work as an Editorial Consultant had not exhibited a bias against the Burmese Government and notwithstanding the isolated comment about one of his broadcasts by the Intermedia Survey,[7] he nevertheless disqualified himself as a candidate for a full time position by failing at his interview. In any event, the Intermedia survey cited by Plaintiff concerned only one of his broadcasts and not his entire career[8] and cited negative comments about his broadcasts as well.[9]

There is nothing inconsistent in RFA's position regarding its use of the language proficiency test as a screening device to determine which applicants should be interviewed. The deposition testimony is undisputed that RFA used the test results to determine which candidates would receive face-to-face interviews. (Thinn Dep. at 29). RFA's response to Plaintiff's Interrogatories is entirely consistent. Thus, RFA's response indicated that the "specific factors" it considered in reaching its decision to hire Kyi Kyi Than and other applicants included the test results as well as respective resumes and interview responses. (See RFA's Ans. to Ints., Response Nos. 11 and 13, attached hereto as Exhibit 1). Plaintiff's Opposition misrepresents RFA's response to Interrogatory No. 12 which more fully reads:

---

[7] RFA discredits the Intermedia Survey because it includes only small, unrepresentative groups of listeners. (Shwe Dep. at 99-100; October 31, 2006 deposition of Susan Lavery Rogers ("Lavery Dep."), attached to Plaintiff's Opposition as Exhibit 17, at 53-54). Because of where RFA broadcasts, scientific audience research is impossible to conduct and so "is of very limited usefulness." (Lavery Dep. at 53).

[8] The record is undisputed that Plaintiff's job performance as an Editorial Consultant was described by his superiors as "normal," "adequate," and "average." (RFA's Memorandum at 21 n.19).

[9] The Intermedia Survey included the following criticisms of Plaintiff's broadcast: 1) Plaintiff's reference to 1990 Burmese elections "sounded forced" and "was not relevant" because the broadcast's topic was internet election campaigning in South Korea, 2) people in Burma do not have access to the technologies covered in Plaintiff's programs, and 3) Burmese scientists or graduate students should be invited to discuss the technological issues.

> Upon consideration of Mr. Than's resume, Burmese Language and
> Journalism test, and responses during the interview, Defendant did
> not hire Plaintiff as a full-time broadcaster primarily due to a
> concern about Mr. Than's journalistic bias and because of his
> performance on RFA's Burmese Language and Journalism test
> relative to the other applicants.

(See RFA's Ans. To Ints., Response No. 12). As indicated in RFA's Memorandum, Plaintiff's

test score would not have permitted him to be interviewed and he was interviewed only because

Soe Thinn placed him on the list of interviewees as a personal favor. (RFA Memorandum at 10,

13, 24).

The record does not support Plaintiff's assertion that Kyi Kyi Than left her position

because of complaints from listeners. (Plaintiff's Opposition at 17). The only record support for

this assertion cited by Plaintiff is the testimony of Khin Maung Nyane that Kyi Kyi Than left

voluntarily because she did not like the pressure of being a full-time broadcaster. (Plaintiff's

Opposition at 17). This hardly supports Plaintiff's assertion; rather, it establishes quite the

opposite. In any event, there is testimony in the record that complaints from listeners were not

confined to Kyi Kyi Than (Shwe Dep. at 96), so no conclusions or adverse inferences can be

drawn from the complaints about her.

Plaintiff's reliance on Fischbach is surprising. The D.C. Court of Appeals in Fischbach

thought the District Court had "lost its compass" when it found discriminatory the promotion of

a less qualified applicant employee over Fischbach. The Court of Appeals found that courts do

not "'second-guess an employer's personnel decision absent [a] demonstrably discriminatory

motive'" (86 F.3d at 1183 (citation omitted)), or rely on 20/20 hindsight to determine that an

employer misjudged the credentials of qualified candidates. Id. Here, the record does not

provide support for any claim of *gender* discrimination against Plaintiff. Plaintiff had been

trying unsuccessfully to get a full-time position with RFA's Burmese Service since 1997 and

never attributed his consistent non-selection to gender. He clearly directed his anger at Soe Thinn, asserting that he engaged in "cronyism" to favor friends and acquaintances. Plaintiff's anger is ironic because Soe Thinn actually *helped* Plaintiff get two interviews for full-time broadcaster positions despite his test scores and failed prior attempts to secure interviews, much less to be hired. Soe Thinn also provided an entree into RFA for Plaintiff by hiring him as a voice consultant and an editorial consultant.

### 3.    The Record Establishes That RFA Offered A Position to Tin Aung Cho Before Offering It To Kyi Kyi Than.

All of the testimony and all of the documentary evidence produced from RFA's personnel records establish that RFA offered the full-time broadcaster position to Tin Aung Cho, a male, before offering it to Kyi Kyi Than. Plaintiff's reliance on a footnote in RFA's initial response to the EEOC's initial charge of discrimination is unfounded. (Plaintiff's Opposition at 2, 20-21).

Contrary to Plaintiff's bare assertion in his Affidavit (Plaintiff's Opposition at 20-21, Plaintiff's Affidavit, attached to Plaintiff's Opposition as Exhibit 3, at ¶¶ 19-21), the record establishes that there was only a single hire in the Burmese Service in 2003. (See RFA's Ans. to Ints., Response No. 4). It further is undisputed that an announcement was made on October 22, 2003 within the Burmese Service that Kyi Kyi Than had been hired to fill that vacancy. It further is undisputed that four candidates were interviewed for the position that ultimately went to Kyi Kyi Than: Tin Aung Cho, Maung Maung Nyo, and Plaintiff. (See Interview Schedule, attached heretofore as Exhibit 2).

Plaintiff's bare assertion in his affidavit that he was told on November 13, 2003 that RFA was hiring Tin Aung Cho (Plaintiff's Affidavit at ¶ 21) is not supported by any record evidence. Plaintiff's own deposition testimony indicates that he had no immediate knowledge of Tin Aung

Cho's employment offer and visa application issues and that he only *believed* Tin Aung Cho's immigration issues began after Khin Maung Soe's resignation. (Than Dep. II, at 250-59) (emphasis added). Further, contrary to Plaintiff's bare assertion, the record establishes that there was only one vacancy in the Burmese Service in October 2003 and none in 2004 (RFA's Ans. to Ints., Response No. 4). Khin Soe left RFA on October 31, 2003. No other Burmese Service broadcaster left RFA in calendar year 2003. (Id.) The record further establishes that four individuals were interviewed for that particular open position including Tin Aung Cho, Maung Maung Nyo, Kyi Kyi Than, and Plaintiff. (See Interview Priority Designations). The record is undisputed that RFA first offered the position to Tin Aung Cho who later withdrew his application because of visa problems. At that point, the record established that Kyi Kyi Than was the only remaining viable candidate because Plaintiff and Maung Maung Nyo had disqualified themselves by answering the bias question incorrectly.

It is axiomatic that a plaintiff cannot defeat summary judgment by creating a factual issue based on a bare assertion that also contradicts his deposition testimony. See Pyramid, 924 F.2d at 1123  Here, Plaintiff's bare assertion concerning when he learned of Tin Aung Cho's hire is unsupported by record evidence and cannot rise to the level of creating a dispute of material fact to defeat summary judgment. Arguably, Plaintiff's assertions concerning Tin Aung Cho are not material in the context of the undisputed fact that Plaintiff became disqualified from any further consideration to be hired for the open position because of his incorrect response to the interview question concerning journalistic bias.

Plaintiff's reliance on RFA's initial response to the EEOC is a bit disingenuous.  That response centered on the apparent untimeliness of Plaintiff's Charge.[10]  Ultimately, the timeliness issue was resolved in the course of early discovery in the instant case.

RFA's statements concerning Cho were addressed in the alternative and, more importantly, were based on information available at the time.  RFA expressly reserved the right to amend its position in the future:

> RFA reserves the right to amend this statement at any time in the future based upon knowledge and new facts.

(October 1, 2004 letter to EEOC, attached to Plaintiff's Opposition as Exhibit 1).  Those additional facts became apparent in the course of discovery in the instant case and the record accurately and undisputably reflects that Cho received the first offer for the open position into which Kyi Kyi Than was hired.

## II.    RFA DID NOT RETALIATE AGAINST PLAINTIFF BY CANCELLING HIS VOICE CONSULTANT CONTRACT.

### A.    RFA's Decision to Terminate Plaintiff's Voice Consultant Contract Was Not Because of His EEOC Complaint.

While a temporal proximity between the adverse employment action and the protected activity may help establish Plaintiff's prima facie case, Plaintiff also must show that the employer had knowledge of the protected activity for the timing to establish his prima facie case. Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985).  Plaintiff cannot do so.

Contrary to Plaintiff's assertions (Plaintiff's Opposition at 27-29), the record establishes that neither Soe Thinn nor Nancy Shwe had knowledge of Plaintiff's EEOC Charge when they

---

[10]  RFA initially moved to bifurcate the timeliness issue so it could explore with the EEOC the facts concerning Plaintiff's filing of his Charge.  Contrary to the face of the Charge document, Plaintiff attempted to file his Charge in June 2004.  The EEOC, however, did not date or serve that Charge until August, giving rise to the timeliness claim.

made the decision not to renew his and two other voice contractors' contracts. While Plaintiff points to Ms. Shwe's mistaken reference to the month of November as the time the decision was made, Ms. Shwe corrected her testimony at her deposition to say that the decision was made in August.[11]

Furthermore, the record is undisputed that Soe Thinn and Nancy Shwe were the decision-makers and that others in RFA management merely approved their decision. (Thinn Dep. at 126; Shwe Dep. at 10). The approval from "senior management," according to Susan Lavery, was a routine deferral to Soe Thinn's and Nancy Shwe's decisions regarding contractors. (Thinn Dep. at 162-63; Lavery Dep. at 10-11, 14, 35). The decision ultimately would be sent "up the . . . hierarchy" and routinely approved by Dan Southerland. (Thinn Dep. at 35, 126; Lavery Dep. at 12-13).

**B.      RFA's Reasons for Terminating Plaintiff's Voice Consultant Contract WEre Not Pretextual.**

The term of Plaintiff's contracts as a Voice Contractor was through September 30 or for one year if the contract was effective on October 1. Moreover, those contracts were "terminable at any time" by either party. (Voice Consultant Agreement, attached hereto as Exhibit 3). Thus, Plaintiff had no expectation of continued employment as a Voice Contractor.

Contrary to Plaintiff's arguments, Plaintiff was not singled out when his Voice Contract was not renewed. To the contrary, the contracts of the other two Voice Contractors in the Burmese Service, whose tenure was nearly identical with Plaintiff's, also were not renewed. (RFA's Memorandum at 16). Plaintiff's assertions that other Voice Contractors since 2004 did not remain at RFA as long as these three individuals ignores the record evidence that they all either voluntarily quit or exhibited the potential to become full-time broadcasters and were hired

---

[11] In any event, it would have been impossible for such a decision to have been made in November since Plaintiff's contract had expired on the previous September 30.

in such positions.  (Shwe Dep. at 84-88; RFA's Ans.to Ints., Response No. 4).  Thus, there has

been no occasion to rely on the previous practice of finding "new voices" every two years or so.

That such practice is not written does not change the fact that it exists and has been utilized when

necessary.

Plaintiff's arguments would have contractors treated as employees, which they are not.

Plaintiff complains that contractors do not receive full-blown formal annual performance

evaluations, which are reserved for full-time employees.  Nevertheless, Voice Contractors'

performance is reviewed annually prior to the expiration of their respective contracts when

decisions are made whether or not to renew them.

Plaintiff's assertions with respect to his hours in September 2004 are specious.  The

record is undisputed that RFA called Voice Contractors on a rotating basis and they worked to

the extent they responded to these calls.  (RFA's Memorandum at 29).  It is undisputed that

RFA's need for Voice Contractors was, at times, urgent.  (Id.).  Plaintiff has not shown that he

was consistently available to respond to these calls.  In fact the opposite is true:  he was

extremely difficult to reach by telephone and made himself unavailable to work when called.

(Id.).

### III.    RFA IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Contrary to Plaintiff's assertion, his claim simply does not reach the level of "extreme

and outrageous" conduct required to prove an intentional infliction of emotional distress claim.

The law is well-settled that cases in the employment context involving injuries such as

humiliation, sleeplessness, high blood pressure, stress, and a reluctance to socialize – the

symptoms the Plaintiff alleges – simply are not sufficiently severe to survive summary judgment

regarding intentional infliction of emotional distress.  <u>See, e.g.</u>, <u>Paul v. Howard Univ.</u>, 754 A.2d 297, 308 n.22 (D.C. 2000).

Plaintiff relies only on two unreported cases for support.  <u>Varjao-Atkinson v. Catholic Univ. of Am.</u>, No. 93-CA00334, 1994 WL 294982, at *2 (D.C. Super. Ct. May 26, 1994) cites no references and no subsequent or previous history to determine its facts and, thus, is of no help to Plaintiff.  Plaintiff ignores the court's finding that the discharge of an employee does not go "beyond all possible bounds of decency [to be] regarded as atrocious and utterly intolerable in a civilized society" which is required to prove an intentional infliction of emotional distress claim. <u>Id.</u> (citation omitted).  Likewise, in <u>Brooks v. District of Columbia</u>, No. 05-362, 2006 WL 3361521, at *3 (D.D.C. Nov. 20, 2006), the plaintiff sued five police officers because they searched him and "'savegely beat him about the body and face.'"  <u>Id.</u> at *1.  Plaintiff's claims do not rise to this level.

## CONCLUSION

For the aforementioned reasons and for the reasons stated in Defendant Radio Free Asia's Memorandum in Support of its Motion for Summary Judgment, RFA respectfully requests that the Court grant its Motion for Summary Judgment and dismiss all counts of the Plaintiff's complaint.

Dated: February 5, 2007                    Respectfully submitted,


Gil A. Abramson (Bar # 237994)
HOGAN & HARTSON LLP
111 South Calvert Street
Suite 1600
Baltimore, MD 21202
(410) 659-2700

Counsel for Defendant
Radio Free Asia

EXHIBITS FOR DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM
IN OPPOSITION TO DEFENDANT RADIO FREE ASIA'S
<u>MOTION FOR SUMMARY JUDGMENT</u>

| 1 | Excerpts from Radio Free Asia's Objections and Responses to Plaintiff's First Set of Interrogatories |
|---|---|
| 2 | Interview Schedule |
| 3 | Voice Consultant Agreement |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of February, 2007, Defendant Radio

Free Asia's Reply to Plaintiff's Memorandum in Opposition to Defendant Radio Free Asia's

Motion for Summary Judgment and Response to Plaintiff's Statement of Material Facts

was filed electronically. Notice of this filing will be sent to all parties by operation of the

Court's electronic filing system.

_____
Gil A. Abramson

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KHIN MAUNG THAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No.** |
| **v.** ) | **1:05-CV-01042 (RMU)** |
| ) | |
| **RADIO FREE ASIA,** ) | |
| ) | |
| **Defendant.** ) | |

**DEFENDANT RADIO FREE ASIA'S RESPONSE TO
PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

Gender Discrimination:

1.      In 2003, RFA used a job advertisement to hire a full-time broadcaster in the Burmese Service which listed several job requirements including one year of broadcast or journalism experience. Radio Free Asia Job Announcement. RFA hired Kyi Kyi Than for that position. Thinn Dep. at 127; Shwe Dep. at 76-77. The record indicates that while Kyi Kyi Than did not have one year of broadcast or journalism experience, she had other skills including as a vocalist in a public forum and comfort before a microphone. Thinn Dep. at 128; Shwe Dep. at 69-70, 78. While prior broadcast or journalism experience was preferred for the position, it was not required and prior experience was not always an indicator of a candidate's success in the position. Thinn Dep. at 131; Shwe Dep. at 78-80. Kyi Kyi Than was qualified for the position of full-time broadcaster.

2.      Plaintiff's journalism skills were not as extensive as he alleges. Than Dep. II at 261-62; Affidavit of Khin Maung Than. Plaintiff's performance as a contractor was considered

"normal," "adequate," and "average." Thinn Dep. at 60-61; see also Shwe Dep. at 14-15; Nyane

Dep. at 16; Lavery Dep. at 15-17. Further, Plaintiff points to no evidence in the record indicating

that RFA was motivated by gender discrimination in its decision to hire Kyi Kyi Than over

Plaintiff.

      3.      RFA hired Tin Aung Cho before offering the full-time broadcaster position to Kyi

Kyi Than. Tin Aung Cho was RFA's first choice and did not offer the position to Kyi Kyi Than,

their second choice, until Tin Aung Cho had to turn down the position because of visa issues in

attempting to immigrate to the United States. Thinn Dep. at 127; Shwe Dep. at 67-68, 76-77.

Moreover, RFA's response to the EEOC expressly reserved the right to amend its initial position

statement based on based on knowledge or new facts. See October 1, 2004 letter to EEOC. It is

undisputed that RFA hired a male candidate before offering the position to a female.

      4.      Plaintiff and another male, Maung Maung Nyo, disqualified themselves from

being considered for the full-time broadcaster position when they answered a question about

Burmese opposition leader Aung San Suu Kyi incorrectly in their interview. Thinn Dep. at 123,

127, 134-37; Shwe Dep. at 66-67, 69, 74. RFA employees interviewing for a position with the

Burmese service prior to 2003, including Plaintiff, were not asked this question. See Thinn Dep.

at 157-161, Shwe Dep. at 11-12, 72.

      Prior to 2003, RFA Vice President of Programming and Executive Editor Dan

Southerland and Deputy Director of Programming Alex Tseu were responsible to conduct

interviews for Burmese Service broadcasters and they made the hiring decisions. Thinn Dep. at

98, 159-60; Shwe Dep. at 8; Affidavit of Dan Southerland ¶ 2. When RFA tasked Soe Thinn

and Nancy Shwe with interviewing candidates in 2003 they began asking the question to

determine journalistic bias and still ask it today. Thinn Dep. at 122-23.

5.      RFA's written policies expressed RFA's core journalistic values to avoid any bias in broadcasting news. It was the consistent practice of Soe Thinn and Nancy Shwe to ask a question to interviewees for broadcaster positions that was geared to uncover journalistic bias in reporting the news. Thinn Dep. at 20, 28, 131. It is implicit in a journalist's job that they must fairly report the news without political bias. Shwe at 72. It is undisputed that since 2003 RFA has refused to hire any individual evidencing political bias. Plaintiff can point to no candidates hired who incorrectly answered the question about Aung San Suu Kyi in their interview.

Retaliation:

6.      Plaintiff filed a charge with the EEOC regarding possible gender discrimination, and a notice of charge was issued on August 19, 2004. Notice of Charge of Discrimination (Aug. 19, 2004), RFA-00462. RFA filed an initial response on October 1, 2004, reserving the right to amend it in the future. Id. Plaintiff received notice that RFA was terminating his Voice Consultant contract on October 2, 2004. Than Dep. I at 155-56.

7.      The decision not to renew Plaintiff's voice contract was made in August 2004. Shwe Dep. at 101-02; Lavery Dep. at 17-18.

8.      There is no evidence indicating that the individuals who terminated Plaintiff's Voice Contract had any knowledge of Plaintiff's EEOC charge regarding possible gender discrimination. Thinn Dep. 150-51, 153-54; Shwe Dep. at 90-91; Lavery Dep. at 41. Plaintiff's charge was submitted to Human Resources which then forwarded it to outside counsel. Tamara Bagley Affidavit at ¶ 12. Soe Thinn and Nancy Shwe, however, were the ones who determined to terminate Plaintiff's voice consultant contract. Thinn Dep. 150-51, 153-54; Shwe Dep. at 90-91; Lavery Dep. at 41. This decision was approved by Susan Lavery. Lavery Dep. at 10, 11, 14, 35.

9.    Soe Thinn and Nancy Shwe make the decisions to renew or terminate contracts. Thinn Dep. at 126; Shwe Dep. at 10. These decisions are reviewed by Susan Lavery. Thinn Dep. at 162-63; Lavery Dep. at 10-11, 14, 35.

10.    RFA has a policy to terminate Voice Contractors every two or three years so that RFA can bring in new, fresh voices. Thinn Dep. at 96, 99-101; Nyane Dep. at 23; Lavery Dep. at 26-27. RFA terminated two other voice consultant contracts at the same time as Plaintiff's contract for the same reason. Thinn Dep. at 96, 100; Nyane Dep. at 23. Since 2004, Voice Contractors either quit or became permanent employees (Shwe Dep. at 84-88; RFA's Ans. to Ints., Response No. 4) and, thus, Soe Thinn and Nancy Shwe have not had occasion to utilize their "new voices" policy since that time.

11.    RFA determined that Plaintiff did not have the potential to become a full-time broadcaster. Thinn Dep. at 96-97; Shwe Dep. at 47-48. Plaintiff, in fact, did not even qualify for an interview for the 2003 full-time broadcaster position, but Soe Thinn placed him on the list of interviewees as a personal favor. Thinn Dep. at 22, 169.

Damages:

12.    Plaintiff is not entitled to damages because he was not discriminated on the basis of gender or retaliation, and he does not have a cognizable intentional infliction of emotional distress claim.

13.    If Plaintiff is entitled to damages, he failed to mitigate his damages by refusing to look for any other work between 2003 and the present. Than Dep. I at 27-28, 31, 50, 54.

Intentional Infliction of Emotional Distress:

14.    The symptoms suffered by Plaintiff are not disputed. These symptoms, however, are not extreme and outrageous.

\*      \*      \*

In addition to the undisputed facts cited above, RFA asserts the following in response to

Plaintiff's response to Defendant RFA's Statement of Material Facts To Which There Is No

Genuine Dispute:

1.      RFA and Plaintiff agree this point is undisputed.

2.      RFA and Plaintiff agree this point is undisputed.

3.      RFA agrees with its characterization that in Plaintiff's letters to RFA's Human

Resources Department he "complained that he had not been interviewed for broadcaster

positions." See RFA's Statement ¶ 3.

4.      It is undisputed that Soe Thinn was present for Plaintiff's 2002 interview, but that

he did not have the authority at that time to participate in the interview or to make hiring

decisions. Thinn Dep. at 98, 159-60; Affidavit of Dan Southerland ¶ 2. Instead Dan Southerland

and Alex Tseu conducted the interviews and made hiring decisions. Id.

5.      RFA and Plaintiff agree this point is undisputed.

6.      RFA and Plaintiff agree this point is undisputed.

7.      RFA and Plaintiff agree this point is undisputed.

8.      RFA began asking candidates for the full-time broadcaster position the question

about how they would portray Burmese opposition figure Aung San Suu Kyi in 2003. Thinn

Dep. at 122-23; Shwe Dep. at 71. Applicants prior to 2002 were not asked this question because

Soe Thinn and Nancy Shwe were not in charge of interviews at that time. Thinn Dep. at 98, 159-

60; Affidavit of Dan Southerland ¶ 2. Since that time they continue to ask this question. Thinn

Dep. at 122-23.

9.      It is undisputed that two of the four candidates interviewed for the Burmese Service's 2003 full-time broadcaster position, Tin Aung Cho and Kyi Kyi Than, answered the question correctly. Thinn Dep. at 123, 127, 134-137; Shwe Dep. at 66-67, 69, 74.

10.     The Burmese Service offered the 2003 full-time broadcaster position to Tin Aung Cho, a male. Thinn Dep. at 127; Shwe Dep. at 67. Mr. Cho could not accept the position because of immigration issues. Thinn Dep. at 127; Shwe Dep. at 68. The position was then offered to Kyi Kyi Than, a female. Thinn Dep. at 127; Shwe Dep. at 76-77.

11.     RFA asserts that it has a policy to replace voice consultants every two to three years to replace them with fresh voices. See supra at Material Facts to Which There is No Genuine Dispute ¶ 10.

12.     RFA and Plaintiff agree this point is undisputed.

13.     The record establishes that neither Soe Thinn nor Nancy Shwe had knowledge of Plaintiff's EEOC Charge when they made the decision not to renew his and two other voice contractors' contracts. Thinn Dep. at 150-51, 153-54; Lavery Dep. at 41; Shwe Dep. at 90-91, 94.

14.     It is undisputed that Plaintiff wrote in a February 23, 2004 letter that his non-selection for the 2003 full-time broadcaster position was due to "cronyism," "favoritism," and "hiring of a foreigner." See RFA's Statement ¶ 14.

Dated: February 5, 2007

Respectfully submitted,

Gil A. Abramson (Bar # 237994)
HOGAN & HARTSON LLP
111 South Calvert Street
Suite 1600
Baltimore, MD 21202
(410) 659-2700

Counsel for Defendant
Radio Free Asia