# EXHIBIT 1

broadcasting which was in contrast to Plaintiff who had been admonished concerning biased reporting. He also was hired in a senior position to give credibility and stability to RFA's then-nascent Burmese Service. (See November 10, 2006 deposition of Khin Maung Nyane, attached to Plaintiff's Opposition as Exhibit 2, at 6-7). October 3, 2006 deposition of Soe Thinn ("Thinn Dep."), attached to RFA's Memorandum as Exhibit 2, at 122-23)

<u>Fischbach v. District of Columbia Department of Corrections</u>, 86 F.3d 1180 (D.C. Cir. 1996), supports RFA's reliance on the bias question as a disqualifying factor. The <u>Fischbach</u> court recognized that giving more weight to responses to interview questions concerning "the manner in which each candidate proposed to do the job" is not discriminatory. <u>Fischbach</u> at 1184. Here, as in <u>Fischbach</u>, RFA used written applications and test results to determine which candidates would be interviewed but based the hiring decision on answers to interview questions.[4] <u>Id.</u> 1182-84. The court found it was reasonable for an employer to place less emphasis on prior experience and instead to focus on how the candidate proposed to actually do the job. <u>Id.</u> at 1184. "An employer may of course select a candidate who on paper is less qualified for other reasons, such as subjective reactions that emerge in the interview." <u>Aka v. Washington Hosp. Ctr.</u>, 156 F.3d 1284, 1294 n.10 (D.C. Cir. 1998) (en banc). In addition, like Plaintiff here, the unsuccessful plaintiff in <u>Fischbach</u> had been passed over previously for various jobs. <u>Fischbach</u>, 86 F.3d at 1184.

Further, contrary to Plaintiff's assertions, the Court of Appeals in <u>Aka</u> recognized that an employer, irrespective of an employee's paper qualifications, properly may reach a hiring decision based on the employer's assessment of an employee's judgment learned during an interview. 1294 n.10. That is even more important here where bias in broadcasting is a

---

[4] The record makes clear that Plaintiff was interviewed despite his inferior qualifications. (RFA's Memorandum at 10, 13, 24).

# EXHIBIT 2

> Upon consideration of Mr. Than's resume, Burmese Language and Journalism test, and responses during the interview, Defendant did not hire Plaintiff as a full-time broadcaster primarily due to a concern about Mr. Than's journalistic bias and because of his performance on RFA's Burmese Language and Journalism test relative to the other applicants.

(See RFA's Ans. To Ints., Response No. 12, attached hereto as Exhibit 1). As indicated in RFA's Memorandum, Plaintiff's test score would not have permitted him to be interviewed and he was interviewed only because Soe Thinn placed him on the list of interviewees as a personal favor. (RFA Memorandum at 10, 13, 24).

The record does not support Plaintiff's assertion that Kyi Kyi Than left her position because of complaints from listeners. (Plaintiff's Opposition at 17). The only record support for this assertion cited by Plaintiff is the testimony of Khin Maung Nyane that Kyi Kyi Than left voluntarily because she did not like the pressure of being a full-time broadcaster. (Plaintiff's Opposition at 17). This hardly supports Plaintiff's assertion; rather, it establishes quite the opposite. In any event, there is testimony in the record that complaints from listeners were not confined to Kyi Kyi Than (Shwe Dep. at 96), so no conclusions or adverse inferences can be drawn from the complaints about her.

Plaintiff's reliance on Fischbach is surprising. The D.C. Court of Appeals in Fischbach thought the District Court had "lost its compass" when it found discriminatory the promotion of a less qualified applicant employee over Fischbach. The Court of Appeals found that courts do not "'second-guess an employer's personnel decision absent [a] demonstrably discriminatory motive'" (86 F.3d at 1183 (citation omitted)), or rely on 20/20 hindsight to determine that an employer misjudged the credentials of qualified candidates. Id. Here, the record does not provide support for any claim of *gender* discrimination against Plaintiff. Plaintiff had been trying unsuccessfully to get a full-time position with RFA's Burmese Service since 1997 and

# EXHIBIT 3

never attributed his consistent non-selection to gender. He clearly directed his anger at Soe Thinn, asserting that he engaged in "cronyism" to favor friends and acquaintances. Plaintiff's anger is ironic because Soe Thinn actually *helped* Plaintiff get two interviews for full-time broadcaster positions despite his test scores and failed prior attempts to secure interviews, much less to be hired. Soe Thinn also provided an entree into RFA for Plaintiff by hiring him as a voice consultant and an editorial consultant.

### 3. The Record Establishes That RFA Offered A Position to Tin Aung Cho Before Offering It To Kyi Kyi Than.

All of the testimony and all of the documentary evidence produced from RFA's personnel records establish that RFA offered the full-time broadcaster position to Tin Aung Cho, a male, before offering it to Kyi Kyi Than. Plaintiff's reliance on a footnote in RFA's initial response to the EEOC's initial charge of discrimination is unfounded. (Plaintiff's Opposition at 2, 20-21).

Contrary to Plaintiff's bare assertion in his Affidavit (Plaintiff's Opposition at 20-21, Plaintiff's Affidavit, attached to Plaintiff's Opposition as Exhibit 3, at ¶¶ 19-21), the record establishes that there was only a single hire in the Burmese Service in 2003. (See RFA's Ans. to Ints., Response No. 4). It further is undisputed that an announcement was made on October 22, 2003 within the Burmese Service that Kyi Kyi Than had been hired to fill that vacancy. It further is undisputed that four candidates were interviewed for the position that ultimately went to Kyi Kyi Than: Tin Aung Cho, Maung Maung Nyo, and Plaintiff. (See Interview Schedule, attached heretofore as Exhibit 2).

Plaintiff's bare assertion in his affidavit that he was told on November 13, 2003 that RFA was hiring Tin Aung Cho (Plaintiff's Affidavit at ¶ 21) is not supported by any record evidence. Plaintiff's own deposition testimony indicates that he had no immediate knowledge of Tin Aung

# EXHIBIT 4

Case 1:05-cv-01042-RMU    Document 31-2    Filed 02/06/2007    Page 7 of 12

Cho's employment offer and visa application issues and that he only *believed* Tin Aung Cho's immigration issues began after Khin Maung Soe's resignation. (Than Dep. II, at 250-59) (emphasis added). Further, contrary to Plaintiff's bare assertion, the record establishes that there was only one vacancy in the Burmese Service in October 2003 and none in 2004 (RFA's Ans. to Ints., Response No. 4). Khin Soe left RFA on October 31, 2003. No other Burmese Service broadcaster left RFA in calendar year 2003. (Id.) The record further establishes that four individuals were interviewed for that particular open position including Tin Aung Cho, Maung Maung Nyo, Kyi Kyi Than, and Plaintiff. (See Interview Priority Designations, attached hereto as Exhibit 3; Thinn Dep. at 136). The record is undisputed that RFA first offered the position to Tin Aung Cho who later withdrew his application because of visa problems. At that point, the record established that Kyi Kyi Than was the only remaining viable candidate because Plaintiff and Maung Maung Nyo had disqualified themselves by answering the bias question incorrectly.

It is axiomatic that a plaintiff cannot defeat summary judgment by creating a factual issue based on a bare assertion that also contradicts his deposition testimony. See Pyramid, 924 F.2d at 1123  Here, Plaintiff's bare assertion concerning when he learned of Tin Aung Cho's hire is unsupported by record evidence and cannot rise to the level of creating a dispute of material fact to defeat summary judgment. Arguably, Plaintiff's assertions concerning Tin Aung Cho are not material in the context of the undisputed fact that Plaintiff became disqualified from any further consideration to be hired for the open position because of his incorrect response to the interview question concerning journalistic bias.

# EXHIBIT 5

made the decision not to renew his and two other voice contractors' contracts. While Plaintiff points to Ms. Shwe's mistaken reference to the month of November as the time the decision was made, Ms. Shwe corrected her testimony at her deposition to say that the decision was made in August.[11]

Furthermore, the record is undisputed that Soe Thinn and Nancy Shwe were the decision-makers and that others in RFA management merely approved their decision. (Thinn Dep. at 126; Shwe Dep. at 10). The approval from "senior management," according to Susan Lavery, was a routine deferral to Soe Thinn's and Nancy Shwe's decisions regarding contractors. (Thinn Dep. at 162-63; Lavery Dep. at 10-11, 14, 35). The decision ultimately would be sent "up the . . . hierarchy" and routinely approved by Dan Southerland. (Thinn Dep. at 35, 126; Lavery Dep. at 12-13).

### B. RFA's Reasons for Terminating Plaintiff's Voice Consultant Contract WEre Not Pretextual.

The term of Plaintiff's contracts as a Voice Contractor was through September 30 or for one year if the contract was effective on October 1. Moreover, those contracts were "terminable at any time" by either party. (Voice Consultant Agreement, attached hereto as Exhibit 4). Thus, Plaintiff had no expectation of continued employment as a Voice Contractor.

Contrary to Plaintiff's arguments, Plaintiff was not singled out when his Voice Contract was not renewed. To the contrary, the contracts of the other two Voice Contractors in the Burmese Service, whose tenure was nearly identical with Plaintiff's, also were not renewed. (RFA's Memorandum at 16). Plaintiff's assertions that other Voice Contractors since 2004 did not remain at RFA as long as these three individuals ignores the record evidence that they all either voluntarily quit or exhibited the potential to become full-time broadcasters and were hired

---

[11] In any event, it would have been impossible for such a decision to have been made in November since Plaintiff's contract had expired on the previous September 30.

# EXHIBIT 6

# EXHIBITS FOR DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT RADIO FREE ASIA'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| 1 | Excerpts from Radio Free Asia's Objections and Responses to Plaintiff's First Set of Interrogatories |
| 2 | Interview Schedule |
| 3 | Interview Priority Designations |
| 4 | Voice Consultant Agreement |