UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KHIN MAUNG THAN, | : | |
| | : | Civil Action No.: 05-1042 (RMU) |
| Plaintiff, | : | |
| | : | Document No.: 25 |
| v. | : | |
| | : | |
| RADIO FREE ASIA, | : | |
| | : | |
| Defendant. | : | |

MEMORANDUM OPINION

G<small>RANTING IN</small> P<small>ART AND</small> D<small>ENYING IN</small> P<small>ART THE</small> D<small>EFENDANT'S</small> M<small>OTION FOR</small> S<small>UMMARY</small> J<small>UDGMENT</small>

I.  INTRODUCTION

This employment discrimination case comes before the court on the defendant's motion for summary judgment. The plaintiff alleges that the defendant discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq*. The complaint also alleges intentional infliction of emotional distress. Because the plaintiff has not presented facts that allow a reasonable trier of fact to conclude that he was the victim of gender discrimination and because the plaintiff has not made a prima facie case of intentional infliction of emotional distress, the court grants the defendant's motion for summary judgment on those counts. The plaintiff, however, has presented sufficient facts to allow a jury to conclude that the defendant retaliated against him when it declined to renew his contract. Accordingly, the court denies the defendant's motion for summary judgment on the retaliation claim.

## II.  BACKGROUND

The defendant, Radio Free Asia ("RFA") is a private, non-profit corporation that prepares and broadcasts news and information about events in Asian countries that do not have a free press.  Mem. in Supp. of Def. Radio Free Asia's Mot. for Summ. J. ("Def.'s Mot.") at 4.  "RFA's nine language services broadcast in their respective native languages from RFA's studios in the District of Columbia."  *Id.*  The plaintiff, a male, submitted applications for employment as a full-time broadcaster at RFA's Burmese Language Service in 1998, 1999, 2000, and 2001.  Def.'s Mot. at 6.  After Soe Thinn, the Burmese Language Service's Director and a "friend of a friend," intervened on his behalf, the plaintiff was selected for an interview in 2002.[1]  *Id.* at 8.  The plaintiff, however, was not selected for the broadcaster position.  *Id.* at 7-8.

The plaintiff thereafter contacted Thinn directly and applied for a position as a voice consultant.  *Id.*  A voice consultant adapts print news stories to a radio broadcast format and, after review by editors, records the stories for broadcast.  Def.'s Mot. at 5; Pl. Dr. Khin Maung Than's Mem. in Opp'n to Def. Radio Free Asia's Mot. for Summ. J. ("Pl.'s Opp'n") at 6.  The plaintiff began working at the Burmese Language Service as an on-call voice consultant in May 2002.[2]  Pl.'s Opp'n at 6 & Ex. 19.  His contract expired on September 30, 2002, and was renewed on October 1, 2002 and again on October 1, 2003.  Def.'s Mot. at 9.  The plaintiff's voice

---

[1]  The plaintiff interviewed with Dan Southerland, Radio Free Asia's ("RFA") Vice President of Programming and Executive Director, and Alex Tseu, the Deputy Director of Programming. Mem. in Supp. of Def. Radio Free Asia's Mot. for Summ. J. ("Def.'s Mot.") at 7.  At that time, Southerland and Tseu made the hiring decisions.  *Id.*

[2]  Prior to his work at RFA's Burmese Language Service, the plaintiff had no formal journalistic training.  While in medical school in Burma, however, he participated in an annual student-run publication and wrote "translations of a Burmese story to English . . . topics on medical findings, and . . . [a] love story."  Pl. Dr. Khin Maung Than's Mem. in Opp'n to Def. Radio Free Asia's Mot. for Summ. J. ("Pl.'s Opp'n"), Ex. 5 at 261-262.

contract, however, was not renewed on October 1, 2004.

In addition to working at RFA as a voice consultant, the plaintiff worked as an editorial consultant. *Id.* "Editorial consultants write feature programs which, after editing by Senior Editors, they record over the telephone for broadcast." *Id.* at 4. The plaintiff's first editorial consultant contract expired on September 30, 2003, and has been renewed every October 1 since then. *Id.* at 9. The plaintiff is currently employed at RFA under an editorial consultant contract. *Id.*

In 2003, RFA's Burmese Language Service determined that it needed a full-time broadcaster. Pl.'s Opp'n at 8. The defendant published a job advertisement, which stated that the minimum qualifications for the job included "one year experience broadcast and/or specialized journalism." *Id.* Although the RFA job announcement stated that journalism experience was required, the Burmese Language Service didn't consider it a requirement because there is no broadcasting or journalism school in Burma and, therefore, few Burmese have formal training in the field.[3] Pl.'s Opp'n, Ex. 7 at 78-80. Moreover, "Burmese society, under the socialist regime, does not have journalists." *Id.* at 131.

Individuals interested in the full-time broadcaster position were required to take a language proficiency test;[4] based on the test results, the Burmese Language Service decided to

---

[3] Tamara Bagley, a Human Resources Specialist at RFA, stated that the Human Resources Department used "a generic job advertisement to post vacancies for broadcaster positions in all language services. The advertisement was not tailored to meet the needs of the particular language services." Def.'s Mot., Ex. 9 ¶ 4.

[4] "The four part test was designed to measure the applicant's ability to translate and adapt news stories from English to Burmese, fluency in both English and Burmese; and the quality of the voices for broadcasting." Pl.'s Opp'n at 10.

interview certain individuals. *Id.* Although the plaintiff's "test score did not come up to a level that he would have been interviewed," Pl.'s Opp'n, Ex. 4 at 121, Thinn once again "intervened on [the plaintiff's] behalf to include him on the list of interviewees," Def.'s Mot. at 11.

In addition to interviewing the plaintiff, Thinn and Nancy Shwe, the Deputy Director of the Burmese Language Service, interviewed Maung Maung Nyo, a man, Tin Aung Cho,[5] a man, and Kyi Kyi Than,[6] a woman. Pl.'s Opp'n at 8. "Interview questions were geared to screen candidates' understanding of RFA and its role, the role of the media in general, journalistic ethics, and the independence and objectivity of the media." Def.'s Mot. at 11-12. In particular, Thinn and Shwe asked each applicant whether he or she would broadcast a news story that portrayed a popular Burmese opposition figure in a negative light, even if that story were true. *Id.* at 12. Applicants who answered that they would not broadcast such a news story were automatically disqualified. *Id.* at 13. According to Thinn, "RFA's policy is very strict about political biases . . . [w]e are not an organization which has any political biases." Pl.'s Opp'n, Ex. 4 at 131-132. Of the four interviewees, only Kyi Kyi Than and Cho answered that they would broadcast such a news story. *Id.* Eventually, the defendant extended job offers to both Kyi Kyi

---

[5] Tin Aung Cho, a long-time friend of Soe Thinn, did not have experience in journalism. But, he had worked in the Burmese Foreign Service with Thinn and held a degree in history, which is "the sort of general knowledge a journalist must have." Pl.'s Opp'n, Ex. 4 at 132, 176. In 2001, when Thinn did not have any hiring authority, he recommended Cho for a full-time broadcasting position. *Id.* at 175-177.

[6] Kyi Kyi Than possessed "no broadcasting or journalism experience" and had a degree in Commerce. Pl.'s Opp'n at 9 & Ex. 12. She was, however, a vocalist, and Nancy Shwe testified that she and Thinn liked her voice. Pl.'s Opp'n, Ex. 7 at 69-72, 78.

Than and Cho.[7] Because Cho had difficulties in acquiring a visa to work in the United States, only Kyi Kyi Than was hired as a broadcaster.

Believing that his qualifications are superior to those of Kyi Kyi Than and believing that he has been the victim of discrimination, the plaintiff contacted the EEOC in April 2004.  Pl.'s Opp'n at 10.  In August or September 2004, the defendant received notice of the plaintiff's charge, and the defendant filed its response to the charge on October 1, 2004.  *Id.*  Shortly thereafter, the defendant informed the plaintiff that his voice contract would not be renewed.  *Id.*  The plaintiff also alleges that the defendant reduced his work hours in September 2004.  *Id.* at 11, n. 6.

The plaintiff filed suit in this court on May 24, 2005.  After the parties engaged in a two-phase discovery process, the defendant filed a motion for summary judgment on December 22, 2006.  The court now turns to that motion.

### III.  ANALYSIS

The defendant argues that the court should grant summary judgment on the gender discrimination claim because the plaintiff has not established a prima facie case.  Def.'s Mot. at 16.  In the alternative, the defendant argues that the plaintiff cannot establish that the defendant's reasons for not hiring him is merely a pretext for discrimination.  *Id.* at 18-25.  With respect to the plaintiff's claim that the defendant retaliated against him by reducing his work hours in September 2004 and by not renewing his voice contract in October 2004, the defendant asserts

---

[7]    The parties dispute whether Kyi Kyi Than or Cho received an offer first.  *See, e.g.,* Def.'s Mot. at 13 and Pl.'s Opp'n at 2.  The court notes, however, that both individuals received offers to join the Burmese Language Service as full-time broadcasters at some point in the fall of 2003.

that the plaintiff cannot prove that it retaliated against him. Def.'s Mot. at 25-31. The court discusses each of these arguments in turn below.

### A. Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The moving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record, *Green*, 164 F.3d at 675 (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Green*, 164 F.3d at 675.

### B. The Court Grants Summary Judgment on the Gender Discrimination Claim

The defendant argues that it is entitled to summary judgment on the plaintiff's gender discrimination claim because the plaintiff has not established a prima facie case of discrimination and because the plaintiff cannot prove that the defendant's reasons for not hiring him are pretextual. The plaintiff, on the other hand, argues that a reasonable jury could conclude that the defendant's decision to hire an allegedly unqualified woman raises an inference of discrimination and that the defendant's stated reasons for not hiring him are pretext. For the reasons that follow, the court grants the defendant's motion for summary judgment on the gender discrimination claim.

#### 1. Legal Standard for a Sex-Discrimination Claim

Generally, to prevail on a claim of sex discrimination under Title VII, a plaintiff must follow a three-part burden-shifting analysis generally known as the *McDonnell Douglas* framework. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection" . . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination . . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted) (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of sex discrimination, the plaintiff must show that (1) he is a member of a protected class; (2) he was similarly situated to an employee who was not a member of the protected class; and (3) he and the similarly situated employee were treated disparately. *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253. If the plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully discriminated against the employee. *Id.* at 254. To rebut this presumption, the employer must articulate a legitimate, non-discriminatory reason for its action. *Id.* The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* Rather, '[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

If the employer successfully presents a legitimate, non-discriminatory reason for its actions, "the *McDonnell Douglas* framework – with its presumptions and burdens – disappears,

and the sole remaining issue is discrimination *vel non*." *Lathram*, 336 F.3d at 1088 (internal citations omitted). At this point, to survive summary judgment, the plaintiff "must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." *Id.* (citing *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1290 (D.C. Cir. 1998) (en banc). The court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. *Waterhouse v. District of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka*, 156 F.3d at 1289). The plaintiff need not present evidence in each of these categories in order to avoid summary judgment. *Aka*, 156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case. *Id.* at 1291.

### 2. The Plaintiff's Prima Facie Case

Neither party adequately addresses the plaintiff's prima facie case in a sex discrimination case in which the plaintiff is a male. The plaintiff, as a male, "is a member of a historically favored group," and hence does not belong to a protected class. *Bell v. Runyon*, 1997 U.S. Dist. LEXIS 10909, at *4 (D.D.C. July 16, 1997); *Bryant v. Leavitt*, --- F. Supp. 2d ----, 2007 WL 530021, at *7 (Feb. 22, 2007). As a male, the plaintiff may still establish a prima facie case if he presents evidence of background circumstances that support an inference of discrimination.[8] *Bell*, 1991 U.S. Dist. LEXIS 10909, at * 4; *see also Bryant*, 2007 WL 530021, at * 7. The types

---

[8] "Such a showing replaces a minority plaintiff's showing of protected status." *Bell v. Runyon*, 1997 U.S. Dist. LEXIS 10909, at *4 (D.D.C. July 16, 1997); *see also Harding v. Gray*, 9 F.3d 150, 153 (D.C. Cir. 1993).

of evidence that can constitute "background circumstances" are of two types: (1) evidence indicating that an employer has some reason or inclination to discriminate against males, and (2) "evidence indicating that there is something 'fishy' about the facts of the case at hand that raises an inference of discrimination." *Harding*, 9 F.3d at 153.

Although neither party expressly argues it, the court presumes that the parties' arguments about the relative qualifications of the plaintiff and Kyi Kyi Than are an attempt to address the background circumstances of this case. Evidence that raises an inference of discrimination can include evidence of the plaintiff's "superior qualifications." *Id.* The plaintiff, however, has not shown that his qualifications were superior to those of Kyi Kyi Than. First, although the plaintiff has more experience in the field of journalism,[9] Kyi Kyi Than answered the political bias question correctly. Second, neither the plaintiff nor Kyi Kyi Than had any formal education in journalism or broadcasting. Third, the plaintiff's scores in the language proficiency test "did not come up to a level that he would have been interviewed." Thinn Dep. at 121. Thinn, however, "wanted to give him a chance" and intervened on his behalf to include him on the list of interviewees. *Id.* Because the plaintiff does not demonstrate that a reasonable jury could conclude that his qualifications were superior to those of Kyi Kyi Than, the court concludes that he has not made a prima facie case. *Harding*, 9 F.3d at 153.

### 3. The Defendant's Legitimate, Nondiscriminatory Reason

Assuming *arguendo* that the plaintiff had established a prima facie case of discrimination, the court would nevertheless conclude that the defendant has met its burden of articulating a

---

[9] The court additionally notes that Cho, and most employees at RFA, also had no prior broadcasting experience. Def.'s Mot. at 17, 20.

legitimate, nondiscriminatory reason for not hiring the plaintiff.  The defendant asserts that the hiring decision was based, *inter alia*, on the plaintiff's response to a question designed to gauge applicants' political bias in reporting news.  Def.'s Mot. at 18-19.  In particular, Thinn and Shwe asked each of the four applicants selected for an interview whether he or she would broadcast a news story that portrayed a popular Burmese opposition figure in a negative light if the story were true.  Def.'s Mot. at 13.  Thinn and Shwe disqualified two applicants, including the plaintiff, because they responded by saying that they would not broadcast such a story.  *Id.*  An employer's assertion that it based its decision on answers a candidate gave during an interview is "both reasonable and nondiscriminatory" and is sufficient to meet the defendant's burden of offering a legitimate reason for not hiring the plaintiff.  *Fischbach v. D.C. Dep't of Corrs.*, 86 F.3d 1180, 1182 (D.C. Cir. 1996).

### 4.  Pretext

Because the defendant has provided a legitimate, nondiscriminatory reason for its hiring decision, the burden shifts back to the plaintiff to demonstrate that a reasonable jury could conclude the defendant's reasons are merely a pretext for discrimination.  The plaintiff has failed to meet this burden.  Thinn and Shwe asked every applicant that they interviewed about their political bias, and every applicant that answered the political bias question incorrectly was automatically disqualified.  Def.'s Mot. at 13.  Although the plaintiff attempts to show pretext by stating that the defendant can offer no written documents to support the assertion that applicants who answered the question incorrectly were automatically disqualified, Pl.'s Opp'n at 22, "[a]n employer may of course select a candidate who on paper is less qualified for other reasons, such as subjective reactions that emerge in the interview."  *Aka*, 156 F.3d at 1294 n.10.

Three additional facts undermine the plaintiff's attempts to discredit the defendant's proffered reason for not hiring him. First, the defendant hired another male, Cho, for a broadcasting position either shortly before or shortly after offering the position to Kyi Kyi Than.[10] *Pyne v. District of Columbia*, 468 F. Supp. 2d 14, 21 (D.D.C. 2006). Indeed, in the time that Thinn and Shwe have been in charge of hiring broadcasters, the defendant has hired six new full-time broadcasters, four of whom are men. Def.'s Mot., Ex. 3. Second, although the defendant used a language proficiency test as a screening device to determine which applicants to interview, the plaintiff's test scores "did not come up to a level that he would have been interviewed." Thinn Dep. at 121. Thinn, however, "wanted to give him a chance" and intervened on his behalf to include him on the list of interviewees. *Id.* The plaintiff's claims that Thinn and Shwe discriminated against him, in other words, are undermined by the fact that Thinn that intervened to give him an interview and Thinn originally hired him. *King v. Georgetown Univ. Hosp.*, 9 F. Supp. 2d 4, 7 (D.D.C. 1998) (citing *Birkbeck v. Marvel Lightning Corp.*, 30 F.3d 507, 513 (4th Cir. 1998), *cert. denied*, 513 U.S. 1058, which stated that employers who hire employees within the group claiming discrimination are seldom "credible targets for charges of pretextual firing"). Third, the plaintiff was not the only applicant disqualified because of his incorrect answer. The other applicant who answered the question incorrectly, Nyo, had six years of journalism experience, yet he was also disqualified on the basis of his answer to the political bias question. Because the plaintiff has not introduced evidence sufficient to establish that a

---

[10] It is unclear when the defendant offered the position to Cho. The defendant asserts that it offered the position that ultimately went to Kyi Kyi Than to Cho first, but that Cho's visa problems precluded him from accepting it. The plaintiff, on the other hand, asserts that the defendant offered Cho a position that became vacant when another broadcaster quit in November, after Kyi Kyi Than had already been hired. Pl.'s Opp'n at 20.

reasonable jury could conclude that the defendant's reasons for not hiring the plaintiff are a pretext for discrimination, the court grants the defendant's motion for summary judgment on the gender discrimination claim.

### C. The Court Denies Summary Judgment on the Retaliation Claim

The plaintiff alleges that the defendant retaliated against him for filing the EEOC complaint by reducing his work hours in September 2004 and by failing to renew his voice consultant contract in October 2004. Compl. ¶¶ 47-55. The defendant argues that it is entitled to summary judgment on the retaliation claim because the plaintiff "cannot rebut that each of these actions was taken for legitimate non-discriminatory reasons," and because the plaintiff "cannot establish a causal link between these actions and his filing an EEOC charge." Def.'s Mot. at 25. For the reasons that follow, the court denies the defendant's motion for summary judgment on the retaliation claim.

#### 1. Legal Standard for a Retaliation Claim

To prevail on a claim of retaliation, a plaintiff must follow a three-part burden-shifting analysis generally known as the *McDonnell Douglas* framework. *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003) (applying the *McDonnell Douglas* framework to a Title VII retaliation claim); *Duncan v. Wash. Metro. Area Transit Auth.*, 214 F.R.D. 43, 49-50 & n.8 (D.D.C. 2003) (applying the *McDonnell Douglas* framework to a Rehabilitation Act retaliation claim). The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of [retaliation]. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, [non-retaliatory] reason for the employee's rejection" . . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by

13

>a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for [retaliation] . . . . The ultimate burden of persuading the trier of fact that the defendant intentionally [retaliated] against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted) (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there existed a causal connection between the protected activity and the materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415-16 (2006); *see also Scott v. Kempthrone*, 2006 WL 1980219, at *3 (10th Cir. July 17, 2006). The plaintiff's burden is not great: the plaintiff "merely needs to establish facts adequate to permit an inference of retaliatory motive." *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001).

With regard to the first prong of the plaintiff's prima facie case of retaliation, statutorily protected activities include the filing of EEOC complaints. *Forkkio v. Powell*, 306 F.3d 1127, 1131-32 (D.C. Cir. 2002). As for the second prong, "[t]he anti-retaliation provision seeks to . . . prohibit[] employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers. And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Burlington N.*, 126 S. Ct. at 2415 (citations omitted). Additionally, "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* Finally, under the third prong, the plaintiff may establish a causal connection "by showing that the employer had knowledge of

the employee's protected activity, and that the [retaliatory] personnel action took place shortly after that activity." *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)). To qualify as a causal connection, however, the temporal proximity between the employer's knowledge of the protected activity and the adverse personnel action must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and that a 20-month period suggests "no causality at all").

### 2. The Plaintiff's Prima Facie Case

The plaintiff here easily carries his burden of establishing a prima facie case. First, the plaintiff engaged in protected activity, namely, filing an official charge with the EEOC. Pl.'s Opp'n, Ex. 14. Second, a reasonable employee would consider that a reduction in work hours (and the resulting reduction in pay) and the termination of a consulting contract to be materially adverse actions. *Stone-Clark v. Blackhawk, Inc.*, 460 F. Supp. 2d 91, 97 (D.D.C. 2006). Third, there is a strong appearance of a causal connection between the plaintiff's filing an official charge with the EEOC and his reduction in work hours and the non-renewal of his voice contract.

The defendant, however, vigorously disputes that the plaintiff has established a causal connection between the protected activity and the materially adverse action. Def.'s Mot. at 25. Specifically, the defendant argues that it declined to renew the plaintiff's voice contract because it had a policy of hiring new voice consultants every few years and because the plaintiff did not have the potential to become a full time broadcaster. *Id.* But, the "plaintiff may satisfy this third element of a prima facie case by showing [that] 'the employer had knowledge of the employee's

protected activity, and the adverse personnel action took place shortly after that activity.'" *Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006) (internal citations and punctuation omitted). The EEOC officially issued a charge of discrimination to the defendant on August 19, 2004 and the defendant responded to the charge on October 1, 2004. Pl.'s Opp'n at 10. On October 2, 2004, Thinn informed the plaintiff that his voice contract would not be renewed.[11] *Id.* at 11. Because the defendant reduced the plaintiff's hours in September and because it declined to renew the plaintiff's voice contract in early October, the court concludes that the plaintiff has fulfilled the third prong of the prima facie case.[12]

### 3. The Defendant's Legitimate, Nondiscriminatory Reason

The defendant has offered a legitimate, nondiscriminatory reason for reducing the plaintiff's hours in September. Specifically, the defendant asserts that it was difficult to get in touch with the plaintiff, even though the defendant typically needed voice contractors on very short notice. Def.'s Mot. at 28. *Carter v. Smithfield's of Morehead, Inc.*, 61 F.3d 899 (4th Cir. 1995) (concluding that the defendant met its burden of offering a legitimate, nondiscriminatory reason for not hiring a plaintiff because the plaintiff could not work the hours required by the employer); *see also Moses v. City of Evanston*, 1998 WL 111568, at *5 (N.D. Ill. 1998) (holding

---

[11] The defendant further contends that it took the decision to not renew the plaintiff's voice contract in August, and therefore, it's decision was not influenced by the EEOC charge. Def.'s Mot. at 30. Thinn, however, testified that he and Shwe took the decision in September. Pl.'s Opp'n at 28.

[12] The defendant also argues that Thinn and Shwe, who made the decision not to renew the plaintiff's voice contract, did not know that he had filed an EEOC charge. Def.'s Mot. at 29. A reasonable jury, however, could conclude that Thinn and Shwe had knowledge of the plaintiff's charge. In particular, Thinn testified that he learned of the plaintiff's EEOC charge in the fall. Pl.'s Opp'n at 28. Moreover, the defendant's outside counsel responded to the EEOC charge on October 1, 2004. Pl.'s Opp'n, Ex. 1. In the response letter, defendant's counsel makes references to the plaintiff's supervisors' assessments of the plaintiff's job performance, demonstrating that the plaintiff's supervisors participated in the response to the EEOC. *Id.*

that an employer defendant raised a legitimate, nondiscriminatory reason for its actions because the plaintiff was not available when his supervisor needed him on several occasions). Additionally, an administrative assistant was responsible for ensuring that hours were evenly distributed among the voice contractors, and it was the administrative assistant that was tasked with reaching the voice contractors for purposes of arranging work. Def.'s Mot. at 28. If the assistant could not reach a particular voice contractor, she called another voice contractor. *Id.* The plaintiff's supervisors, in other words, were not involved in the reduction of hours.

The defendant has also offered two legitimate, nondiscriminatory reasons for not renewing the plaintiff's contract in October. Specifically, Thinn, Shwe, and Khin Maung Nyane testified that the Burmese Language Service changed voice contractors every two or three years to provide listeners with new voices. Defs.' Mot. at 26. Thinn and Shwe also testified that none of the three voice consultant contracts were renewed because none of the three contractors had the potential to become a full time broadcaster. *Id.* at 25. Because the defendant has proffered legitimate, nondiscriminatory reasons for the reduction in the plaintiff's work hours and for its decision not to renew the plaintiff's voice contract, the defendant has met it burden. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (explaining that the defendant's "burden is one of production, not persuasion").

### 4. Pretext

As the defendant has offered a legitimate, nondiscriminatory reason for its actions, the burden shifts to the plaintiff to show that the defendant's proffered reason is a pretext. To prevail on a showing of pretext, it "is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible . . . He must show that the explanation given is a phony

17

reason." *Pignato v. Am. Trans Air, Inc.*, 14 F.3d 342, 349 (7th Cir. 1994). The plaintiff offers no facts to rebut the defendant's assertion that it reduced the plaintiff's hours in September because he was unavailable to work when needed. *See generally* Pl.'s Opp'n. The court therefore concludes that the plaintiff has not met his burden of showing that the defendant's proffered reasons for reducing his September 2004 work hours are pretextual.

The court, however, rules that the plaintiff has shown that a reasonable jury could conclude that the defendant's proffered reasons for not renewing his voice contract in October 2004 are a pretext. In particular, the plaintiff shows that in the years before and after his non-renewal, no other voice contract was terminated because of the new voices policy. Pl.'s Opp'n at 30. Indeed, the defendant's alleged policy regarding new voices is inconsistent with its practice of keeping employees in other broadcaster positions for many years. *Id.* at 31. Such a showing undermines the defendant's proffered nondiscriminatory reason for its actions. *Curry v. Menard, Inc.*, 270 F.3d 473, 480 (7th Cir. 2001) (concluding that an employer's inconsistent application of its promotional policy supported the plaintiff's allegation that the employer's proffered reasons were pretextual); *Trent v. Valley Elec. Ass'n, Inc.*, 111 F.3d 138 (9th Cir. 1997) (stating that "[p]retext can be shown by the inconsistent application of employer policy"). In short, because a rational trier of fact could conclude that the defendant's reasons for not renewing the plaintiff's contract are a pretext, the court denies the defendant's motion for summary judgment on the claim that the failure to renew the voice contract constitutes retaliation.

### D. The Court Grants Summary Judgment on the Intentional Infliction of Emotional Distress Claim

To establish a prima facie case of intentional infliction of emotional distress in the

District of Columbia, a plaintiff must show "(1) extreme and outrageous conduct on the part of the defendants, which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Turner v. District of Columbia*, 383 F. Supp. 2d 157, 180 (D.D.C. 2005) (quoting *Futrell v. Dep't. of Labor Fed. Credit Union*, 816 A.2d 793, 808 (D.C. 2003)). "In the employment context, conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* (internal quotations omitted); *see also Duncan v. Children's Nat'l Med. Ctr.*, 702 A.2d 207, 211-12 (D.C. 1997) (noting that "generally, employer-employee conflicts do not rise to the level of outrageous conduct"). A plaintiff cannot prevail on an intentional infliction of emotional distress claim merely because he suffered mental distress. *Crowley v. N.A.. Telecomms. Ass'n.*, 691 A.2d 1169, 1172 (D.C. 1997).

    The plaintiff has failed to allege any set of facts from which a reasonable trier of fact could find in his favor on the intentional infliction of emotional distress claim. While the plaintiff may have been understandably distressed because he was not selected for the broadcaster position and because his voice contract was not renewed, the plaintiff's complaint and opposition brief are devoid of any allegation that the defendant engaged in conduct that is even remotely extreme and outrageous. *Crowley*, 691 A.2d at 1172 (granting summary judgment on the plaintiff's intentional infliction of emotional distress claim where the plaintiff "allege[d] only that he was subjected to contempt, scorn and other indignities in the workplace by his supervisor and an unwarranted evaluation and discharge"). Accordingly, the court grants the defendant's motion for summary judgment as to the plaintiff's intentional infliction of emotional distress claim.

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendant's motion for summary judgment.  An order directing the parties consistent with this Memorandum Opinion is separately and contemporaneously issued this 30th day of April, 2007.

RICARDO M. URBINA
United States District Judge
